## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| Judith T., | |
| Plaintiff, | Civil No. 3:22-CV-00527-TOF |
| v. | |
| Kilolo Kijakazi, Acting Commissioner of Social Security, | March 30, 2023 |
| Defendant. | |

## <u>RULING ON PENDING MOTIONS</u>

The Plaintiff, Judith T.,[1] appeals the decision of the Commissioner of Social Security ("Commissioner" or "Defendant"), rejecting her application for Title II Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits under Title XVI. (Compl., ECF No. 1.)  She has moved the Court for an order reversing the Commissioner's decision and awarding benefits, among other relief.  (ECF No. 25, at 1-2.)  The Commissioner has moved for an order affirming the decision.  (ECF No. 27.)  The parties consented to jurisdiction before a United States Magistrate Judge and on May 3, 2022, the matter was transferred to me, United States Magistrate Judge Thomas O. Farrish, for all purposes.  (ECF Nos. 13, 16.)

The Plaintiff, proceeding *pro se*, makes various requests that can be grouped in the following three ways.  (*See* discussion, Section III *infra.*)  First, she argues that the Administrative Law Judge ("ALJ") should have reconsidered her prior applications for benefits from 2009 and 2010.  (ECF No. 25, at 2-6.)  Second, she makes various requests that are beyond this Court's

---

[1]     Pursuant to the Court's January 8, 2021 Standing Order, the Plaintiff will be identified solely by first name and last initial throughout this opinion.  *See* Standing Order Re: Social Security Cases, No. CTAO-21-01 (D. Conn. Jan. 8, 2021).

jurisdiction, such as a claim for damages incurred from negligent infliction of emotional distress. (*Id.* at 1-2, 9.)  Third, she argues that the ALJ did not adequately consider the side effects of her psychiatric medications.  (*Id.* 5, 7.)

Having carefully considered the parties' submissions, and having carefully reviewed the entire, 1,164-page administrative record, the Court concludes that the ALJ committed no reversible legal error and that his decisions were supported by substantial evidence.  Accordingly, the Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 25) is **DENIED;** the Commissioner's Motion to Affirm the Decision (ECF No. 27) is **GRANTED**; and judgment will be entered in the Commissioner's favor.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The Plaintiff has two prior applications for benefits that she has placed at issue in this case. She first filed for DIB on September 24, 2009, and for SSI on October 7, 2009.  (ECF No. 24-1, at 1; R. 91.)[2]  Both claims were denied and there is no indication in the record or the Plaintiff's motion that she sought further review of these claims.  The Plaintiff then filed second applications for DIB and SSI on November 29, 2010.  (R. 76.)  She pursued the claims to the level of a written decision from an ALJ, receiving an administrative hearing on April 24, 2012, but the claims were ultimately denied on May 17, 2012.  (R. 76-85, 91.)  She did not request review from the Appeals Council or file a civil action.

Moving to the present case, the Plaintiff filed an application for DIB under Title II on March 27, 2020, and a claim for SSI benefits under Title XVI on September 11, 2020.  (R. 11, 223-24, 225-34.)  She claimed that she could not work because of plantar fasciitis, lower back

---

[2]    Citations to the administrative record will refer to the record pagination (Social Security Transcripts), and not the pagination assigned by the electronic case filing system (CM/ECF).

pain, tendonitis, pain in lower extremities, generalized anxiety disorder, and dysthymic disorder. (R. 90.) She alleged a disability onset date of May 28, 2019.[3] (R. 14, 91.)

On July 22, 2020, the Social Security Administration ("SSA") found that the Plaintiff was "not disabled." (R. 100, 132, 137.) The SSA again denied her claim on reconsideration on August 12, 2021. (R. 122-23, 143.) The Plaintiff then requested a hearing before an ALJ, and on December 16, 2021, Judge John Aletta held a hearing. (R. 65-94.) The ALJ also heard testimony from a vocational expert ("VE"), Hank Lerner. (R. 80-88.) The Plaintiff represented herself at the hearing (R. 37-38), and she testified that she had difficulty working because of stress and the way her medications impacted her emotional state. (R. 48.) While she stressed her physical limitations, she also emphasized that, in her view, her primary limitation is the impact from her various medications. (R. 48-49, 70-71.) She also suggested that the ALJ should consider the present application and her 2009 application for benefits as "one issue." (R. 56-57.)

On February 18, 2022, the ALJ issued an unfavorable decision. (R. 11-25.) As will be discussed below, ALJs are required to follow a five-step sequential evaluation process in adjudicating Social Security claims (*see* discussion, Section II *infra*), and ALJ Aletta's written decision followed that format. Before proceeding to the five-step analysis, the ALJ also noted and denied the Plaintiff's request that her prior application be reopened and reconsidered. (R. 12.) At Step One of his analysis, he found that the Plaintiff had not engaged in substantial gainful activity since her claimed disability onset date of May 28, 2019. (R. 14.) At Step Two, he found that the

---

[3]     The relevant period under review for Plaintiff's DIB benefits runs from May 28, 2019, her amended alleged onset date, through the date of the ALJ's decision, February 18, 2022. 20 C.F.R. §§ 404.130, 404.315(a); *Arnone v. Bowen*, 882 F.2d 34, 37 (2d Cir. 1989). In contrast, regarding her application for SSI benefits, the relevant period under review runs from September 11, 2020, the date she applied for benefits, through the date of the ALJ's decision, February 18, 2022. 20 C.F.R. §§ 416.330, 416.335; *see Frye v. Astrue,* 485 F. App'x. 484, 485 n.1 (2d Cir. 2012) (summary order). The Plaintiff's date last insured for DIB is September 30, 2024. (R. 12.)

Plaintiff suffers from the severe impairments of generalized anxiety disorder, dysthymic disorder, adjustment disorder with mixed anxiety and depressed mood, depressive disorder, bilateral carpal tunnel syndrome, and plantar fasciitis.  (*Id.*)  In addition to these impairments, the ALJ found the Plaintiff's obesity, disc protrusion of the cervical spine, and right biceps tendonitis to be medically determinable impairments but not severe.  (R. 14-15.)  At Step Three, he concluded that the Plaintiff's impairments or combination of impairments did not meet or medically equal the severity of one of the "Listings" – that is, the impairments listed in 20 C.F.R. Part 404, Subpart B, Appendix 1.  (R. 15-17.)  He then determined that, notwithstanding her impairments, the Plaintiff retained the residual functional capacity to perform medium work, but with the following limitations:  "She can occasionally feel objects with her bilateral upper extremities; can occasionally climb ramps and stairs; can occasionally climb ladders, ropes, or scaffolds; cannot perform tasks at a strict, production rate pace."  (R. 17-18.)

At Step Four, the ALJ found that the Plaintiff can perform her past relevant work as a contact printer or housekeeper as generally performed in the national economy.   (R. 23.)  Nevertheless, the ALJ went on to Step Five, and determined that the Plaintiff could perform the jobs of hand packager, cashier II, or club waitress.  (R. 24.)  In summary, he found that the Plaintiff had not been under a disability, as defined in the Social Security Act, from May 28, 2019, through February 18, 2022.  (R. 25.)

On February 19, 2022, the Plaintiff requested that the Appeals Council review the ALJ's decision.  (R. 214-15.)  She also sought "a full reconsideration on all applications filed under my social security number from 2009-2022[.]"  (R. 214.)  On March 25, 2022, the Council found "no reason under our rules to review the [ALJ']s decision" and, therefore, denied the Plaintiff's request for review.  (R. 1.)  It added that if the Plaintiff wished to contest it, she could "ask for court review

. . . by filing a civil action."  (R. 2.)

The Plaintiff then filed this action on April 11, 2022.  (Compl., ECF No. 1.)  The Commissioner answered the complaint by filing the administrative record on June 7, 2022.  (ECF No. 23; *see also* D. Conn. Standing Scheduling Order for Social Security Cases, ECF No. 5, at 2 (stating that the Commissioner's filing of the administrative record is "deemed an Answer (general denial) to Plaintiff's Complaint").)  On June 21, 2022, the Plaintiff filed her Motion to Reverse the Decision of the Commissioner.  (ECF No. 25.)  On September 13, 2022, the Commissioner filed a motion for an order affirming her final decision.  (ECF No. 27.)  The plaintiff filed her reply brief on September 26.  (ECF No. 28.)  The parties' motions are therefore ripe for decision.

## II.   APPLICABLE LEGAL PRINCIPLES

To be considered disabled under the Social Security Act, "a claimant must establish an 'inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.'"  *Smith v. Berryhill*, 740 F. App'x 721, 722 (2d Cir. 2018) (summary order) (quoting 20 C.F.R. § 404.1505(a)).  To determine whether a claimant is disabled, the ALJ follows a familiar five-step evaluation process.

At Step One, the ALJ determines "whether the claimant is currently engaged in substantial gainful activity . . . ."  *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing *Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008)).  At Step Two, the ALJ analyzes "whether the claimant has a severe impairment or combination of impairments . . . ."  *Id.*  At Step Three, the ALJ then evaluates whether the claimant's disability "meets or equals the severity" of one of the "Listings" – that is, the specified impairments listed in the regulations.  *Id.*  At Step Four, the ALJ uses an RFC assessment to determine whether the claimant can perform any of her "past relevant work."

*Id.* At Step Five, the ALJ addresses "whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's [RFC], age, education, and work experience." *Id.* The claimant bears the burden of proving her case at Steps One through Four. *Id.* At Step Five, "the burden shift[s] to the Commissioner to show there is other work that [the claimant] can perform." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 445 (2d Cir. 2012) (per curiam).

In reviewing a final decision of the Commissioner, this Court "perform[s] an appellate function." *Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981). Its role is to determine whether the Commissioner's decision is supported by substantial evidence and free from legal error. "A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error." *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (internal quotation marks omitted).

A disability determination is supported by substantial evidence if a "reasonable mind" could look at the record and make the same determination as the Commissioner. *See Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (defining substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion") (citations omitted). Though the standard is deferential, "[s]ubstantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (internal quotation marks and citations omitted). When the decision is supported by substantial evidence, the Court defers to the Commissioner's judgment. "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [this Court] will not substitute [its]

judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).

An ALJ does not receive the same deference if he has made a material legal error.  In other words, district courts do not defer to the Commissioner's decision "[w]here an error of law has been made that might have affected the disposition of the case." *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) (internal quotation marks omitted).  "Even if the Commissioner's decision is supported by substantial evidence, legal error alone can be enough to overturn the ALJ's decision." *Ellington v. Astrue*, 641 F. Supp. 2d 322, 328 (S.D.N.Y. 2009) (citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)).

## III.   DISCUSSION

In this case, the Plaintiff seeks relief from this court in three principal respects.  (*See generally* ECF No. 25.)  First, she primarily argues that the ALJ should have reopened and reviewed her prior applications for benefits.  (*Id.* at 4.)  Second, she has also requested other damages and injunctive relief that is beyond the jurisdiction of this court.  (*Id.* at 1-2, 9.)  Third and finally, she argues that the ALJ did not adequately consider the side effects of her psychiatric medications.  (*Id.* at 5-7.)  I will address each argument in turn.

### A.   The Plaintiff Seeks Relief that is Beyond this Court's Jurisdiction

#### i.   This Court Lacks Jurisdiction to Reopen or Reconsider Prior Applications

The Plaintiff devotes most of her brief to disputing the denial of her 2009 and 2010 applications for benefits.  (*See id.* at 2-6.)  On February 4, 2022, after the ALJ held a hearing but before he issued his decision, the Plaintiff sent the ALJ a letter asking that he reopen and reconsider her prior applications.  (R. 365.)  The ALJ acknowledged this request in his written decision but declined to reopen the prior applications.  (R. 12.)  The Plaintiff states that she "is seeking full reversal of Social Security Commissioner's decision for disability benefits dating back to her initial

filing of October 7, 2009, as well as seeking her disability onset date be recognized from year 2006." (*Id.* at 1.)  The Defendant argues that the ALJ appropriately followed agency regulations and that, in any event, this Court lacks jurisdiction to review the ALJ's decision not to reopen the prior applications.  (ECF No. 27-1, at 5-7.)  The Defendant is correct.

Federal regulations provide DIB and SSI applicants with several opportunities for review. *See Byam v. Barnhart*, 336 F.3d 172, 175 (2d Cir. 2003); *Malave v. Sullivan*, 777 F. Supp. 247, 251 (S.D.N.Y. 1991).  A claimant whose initial application has been denied may request reconsideration by filing a written request within sixty days.  20 C.F.R. §§ 404.909, 416.1409.  If the claim is denied on reconsideration, the claimant can then request a hearing before an ALJ within sixty days.  20 C.F.R. §§ 404.907, 404.933, 416.1429, 416.1433.  If the claimant is dissatisfied with the ALJ's decision, she can request review by the Appeals Council within sixty days.  20 C.F.R. §§ 404.968, 416.1468.  If a claimant disagrees with the final determination of the Appeals Council, 42 U.S.C. § 405(g) provides that "within sixty days" a claimant may seek review of the decision by initiating a civil action in a district court of the United States.  These regulations further provide that once a "claimant has pursued all the levels of appeal [she] wishes, that administrative determination is binding on the claimant as to that particular claim."  *Malave*, 777 F. Supp. at 251; *see* 20 C.F.R. §§ 404.981, § 416.1481.  The regulations for both DIB and SSI state that "if you are dissatisfied with a determination or decision made in the administrative review process, but do not request further review within the stated time period, you lose your right to further review and that determination or decision becomes final."  20 C.F.R. §§ 404.987, 416.1487.  This is called "administrative *res judicata*."[4]  *Malave*, 777 F. Supp. at 251.  As a consequence of

---

[4]     "*Res judicata*" is a Latin phrase meaning "the thing has been decided."  The doctrine of *res judicata*, or claim preclusion, provides that a final judgment on the merits of an action precludes the parties from relitigating issues that were, or could have been raised in that action.  *Monahan v.*

this regime, "once a claimant has applied for benefits based on one set of facts, and that claim has been adjudicated as far as the claimant chose to pursue it, the [Defendant's] determination is binding and the [Defendant] can dismiss any future applications for benefits based on the same facts.  The claimant, of course, remains free to pursue new claims."  *Id.*

The Plaintiff filed two prior applications for benefits.  She first filed for SSI on October 7, 2009.  (ECF No. 25-1, at 1.)  This application was denied on October 14, 2009, because she had too much income to be eligible for SSI.  (*Id.*)  She also filed a claim for DIB on September 24, 2009, which was denied on March 26, 2010.  (R. 91.)  It does not appear that she sought reconsideration or further review on either of these claims – there is no indication in the record, nor has she indicated in her motion that she did.  Thus, the determination of the Commissioner became final on these claims.

The Plaintiff then filed applications for DIB and SSI on November 29, 2010.  (R. 76.)  In both applications, she alleged a disability onset date of November 15, 2006.  (*Id.*)  The claims were initially denied on March 11, 2011, and upon reconsideration on May 11, 2011.  (*Id.*)  She then filed a request for a hearing before an ALJ and received a hearing on April 24, 2012.  (*Id.*)  The Plaintiff was represented by counsel at the time.  (*Id.*)  On May 17, 2012, the ALJ issued an unfavorable decision, finding that the Plaintiff had not been disabled from November 15, 2006, through the date of the decision.  (R. 84-85.)  The Plaintiff did not request review by the Appeals Council or file a civil action for the 2010 application.  (R. 91.)  Thus, the May 17, 2012, ALJ decision became the Commissioner's final determination.

---

*New York City Dep't of Corr.*, 214 F.3d 275, 284-85 (2d Cir. 2000).  In the Social Security context, this applies "when the claimant has had a previous disability determination on the same facts and issues, and such determination has become final by either administrative or judicial action."  *Amato v. Bowen*, 739 F. Supp. 108, 111 (E.D.N.Y. 1990).

As a result, the narrow issue before the ALJ in *this* case was whether the Plaintiff was disabled from May 28, 2019, through the date of the written decision on February 18, 2022. And the narrow issue before this Court, is whether the ALJ's decision in that regard was supported by substantial evidence and free from legal error. The Plaintiff's arguments regarding why these prior applications were denied have no bearing on this question.

The regulations do provide, however, that the Commissioner has discretion to reopen prior determinations under certain limited circumstances. First, if it is within twelve months of the date of the notice of the initial determination, a claimant can move to reopen a decision "for any reason." 20 C.F.R. §§ 404.988, § 416.1488. Second, if it is within two years of the date of the notice for SSI or four years of the date of the notice for DIB, the application can be reopened only upon a showing of good cause. *Id*. The Commissioner will find good cause if (1) new and material evidence is provided; (2) a clerical error was made; or (3) the evidence that was considered in making the determination clearly shows on its face that an error was made. 20 C.F.R. §§ 404.989, 416.1489. Third, if the request is made beyond that two or four-year window, the application can be re-opened at any time if the decision "was obtained by fraud or similar fault." 20 C.F.R. §§ 404.988, 416.1488.

The Defendant argues that the ALJ appropriately followed these regulations and declined to reopen or reconsider the prior applications. This Court need not reach that issue, however, because, as the Defendant contends, a district court does not have jurisdiction to review the ALJ's decision not to reopen prior applications. "The Commissioner's decision not to reopen a prior determination is not a final decision for the purposes of § 405(g), and thus federal courts lack jurisdiction to review the administrative decision not to reopen a previous claim for benefits." *Saxon v. Astrue*, 781 F. Supp. 2d 92, 99 (N.D.N.Y. 2011) (citing *Byam*, 336 F.3d at 179). The

Supreme Court ruled in *Califano v. Sanders* that § 405(g) "cannot be read to authorize judicial review of alleged abuses of agency discretion in refusing to reopen claims for social security benefits." 430 U.S. 99 (1977). Nevertheless, there are two circumstances in which federal courts may review the Commissioner's decision not to reopen a disability application: "(1) where the Commissioner has constructively reopened the case; and (2) where the claimant has been denied due process." *Saxon*, 781 F. Supp. 2d at 99. Neither situation applies here.

Constructive reopening plainly does not apply. It is a principle that applies when "the Commissioner 'reviews the entire record and renders a decision on the merits'"; if she does so, "the earlier decision will be deemed to have been reopened, and any claim of administrative *res judicata* to have been waived' and thus, 'the claim is . . . subject to judicial review.'" *Byam*, 336 F.3d at 180 (citing *Malave*, 777 F. Supp. at 251-52). In this case, by contrast, the ALJ summarily denied the request to reopen, merely noting that the prior applications were outside of the permissible reopening period and too remote to be relevant to the current alleged period of disability. (R. 12.) This does not constitute a review of the Plaintiff's prior applications on the merits, and thus her applications were not constructively reopened.

Nor has the Plaintiff demonstrated that she was denied due process. Claimants can demonstrate that they were denied due process by showing that they were mentally incapable of pursuing administrative remedies in prior applications.[5] *Byam*, 336 F.3d at 181-82. This requires a showing that the claimant is "incapable of understanding the administrative requirements for appeal." *Stellacci v. Barnhart*, No. 02-cv-8875 (SAS), 2003 WL 22801554, at *3 (S.D.N.Y. Nov. 24, 2003) (citing *Steiberger v. Apfel*, 134 F.3d 37, 41 (2d Cir. 1997)). "[G]eneralized allegation[s],

---

[5] Some courts have also found a due process violation where the actual notice or Explanation of Rights was deficient in some way, *see Stellacci*, 2003 WL 22801554, at *4 (collecting cases), but the Plaintiff has made no such allegation here.

long after the fact, that the claimant was too confused to understand available administrative remedies" are not sufficient to make this showing; rather, a plaintiff must put forth "medical evidence or testimony" that shows "that plaintiff suffered a psychological disorder severe enough to prevent her from understanding the notice of her right to appeal." *Id.*

The Plaintiff has put forth no evidence that would demonstrate that her impairments prevented her from understanding the process of appealing her prior determinations.  In her reply brief, the Plaintiff writes that she "objects to the [Defendants'] attempt to utilize this court proceeding to again, dismiss her due process regarding her pharmaceutical disability by burying relevant records/claims" and includes several citations to the record.  (ECF No. 28-1, at 3.)  None of the pages that she has cited, however, include "medical evidence or testimony" that shows that she was incapable of understanding the administrative process between 2009 and 2012.[6]  Rather, several of the pages she cited to include letters that she wrote to the ALJ imploring him to reconsider her prior applications, but they do not contain references to specific medical evidence that would show incapacity.  (R. 342, 361, 365-66, 740-41.)  To the contrary, the record indicates that during that period the Plaintiff was able to attend community college and pass classes, apply for unemployment benefits without representation, work part time as a home health companion, and care for her minor children.  (R. 79-81, 790-91, 819-20.)  Not to mention, she was able to pursue her 2011 application to the point of a written ALJ decision and was represented by counsel during that administrative process.  (R. 76.)  The Plaintiff has failed to establish that she was deprived of due process in her prior applications.

In the absence of constructive reopening or a colorable due process claim, administrative

---

[6]     In the interest of fairness, for each page number she provided the Court reviewed the corresponding page according to the record pagination generated by the Defendant and the pagination assigned by the electronic case filing system (CM/ECF).

*res judicata* applies and precludes this Court from reviewing the ALJ's decision not to reopen the prior applications.  *See Saxon*, 781 F. Supp. 2d at 99; *Dixon v. Cha*ter, 954 F. Supp. 58, 60 (E.D.N.Y. 1997).

### ii.   This Court Cannot Award Damages or Injunctive Relief

The Plaintiff has several other requests that are beyond this Court's jurisdiction.  She seeks "fair and just compensation for other damages incurred by negligent infliction of emotional distress, stress and anxiety, mental anguish" and "fair and just compensation for medical discrimination."  (ECF No. 25, at 2.)  She also seeks "retraining" of Social Security staff and doctors to "prevent future errors."  (*Id.*)  Specifically, she feels that staff should be "educated on who the acting commissioner is and other relevant helpful information that could assist applicants in the navigation of this . . . process instead of causing obstacles to overcome."  (*Id.* at 9.)  The Defendant argues that this Court does not have the authority to grant the requested relief.  (ECF No. 27-1, at 7-8.)  The Defendant is correct.

42 U.S.C. § 405(g) grants reviewing courts the power to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing," but a district court cannot order the Defendant to pay damages.  To the extent the Plaintiff seeks monetary damages for violations of the Social Security Act, her claim is barred by a doctrine called "sovereign immunity."

The United States is generally immune from suit.  "Sovereign immunity shields the United States from suit absent a consent to be sued that is 'unequivocally expressed.'"  *United States v. Bormes*, 568 U.S. 6 (2012).  The Second Circuit has held that this extends to claims for money damages by social security applicants.  *See Donnelly v. Barnhart*, 80 F. App'x 701, 702 (2d Cir. 2003).  "[T]he United States has not waived its sovereign immunity for claims by a Social Security

claimant seeking monetary relief in addition to benefits awards." *Id.* Moreover, "the Supreme Court has found that no action for damages can be maintained against personnel of the SSA because Congress provided an elaborate statutory scheme in the Act with 'meaningful safeguards or remedies for the rights of persons' wrongfully denied under the Act." *Ortega v. Colvin*, No. 13-cv-3487, 2015 WL 6143591, at *4 (E.D.N.Y. Oct. 19, 2015) (quoting *Schweiker v. Chilicky*, 487 U.S. 412, 425 (1988)).

Additionally, to the extent the Plaintiff is asserting a cause of action in tort against the United States for alleged damages, her claim would also be barred by sovereign immunity because she failed to name the United States as a party and failed to administratively exhaust her claims. *See Nguyen v. Kijakazi*, No. 20-cv-607 (MKB), 2022 WL 542265, at *6 (E.D.N.Y. Feb. 23, 2022). The Plaintiff's request for damages is denied.

The Plaintiff also requests that the disability benefits she applied for on May 3, 2022, be granted and paid to her as soon as possible. (ECF No. 25, at 2.) This Court's jurisdiction, however, is triggered upon a final determination by the Commissioner. The Plaintiff has made no allegation or showing that the Commissioner has issued a final determination on her new application, so this Court has no jurisdiction over that claim. *See Neira v. Off. of Soc. Sec.*, No. 22-cv-00949 (JMA/LGD), 2022 WL 17489023, at *2 (E.D.N.Y. Dec. 6, 2022). The Plaintiff's request is denied.

The Plaintiff also requests that this Court order that Social Security staff and representatives undergo further training. She has not pointed the court to any statutory provision, regulation, or legal authority that would provide a district court with the authority to order this relief, nor has the Court been able to locate any such authority. The Plaintiff's request is denied.

### B.     The ALJ Appropriately Considered the Plaintiff's Medications

While the bulk of the Plaintiff's motion concerns the denial of her prior applications, she

also suggests that the ALJ failed to appropriately consider the full impact of her prescription medications and their side effects. (*See* ECF No. 25, at 5, 7.) She testified at the hearing that she considers her primary limitation to be the side effects of her medications. (R. 48-49, 70-71.) She argues that her "disability is and always has been, a 16 yearlong (and counting), . . . relationship with pharmaceutical drug treatments for Hepatitis C (interferon/Ribavirin) and over 30 anti-depressants and anxiety medications." (ECF No. 25, at 5.) She then lists some of the side effects of her medications, including anxiety, depression, suicidal ideation, drowsiness, headaches, high blood pressure, dizziness, and uncontrollable body movements. (*Id.* at 7.)

The Plaintiff's argument fails for two reasons. First, only evidence of side effects and medications from May 28, 2019, through February 18, 2022, would be relevant to this application for benefits. Second, the ALJ's conclusion that the Plaintiff's impairments were not disabling need only be supported by substantial evidence.

To the first point, in her letters to the ALJ and in her Motion to Reverse, the Plaintiff frequently points to her interferon and Ribavirin treatments that she received for hepatitis C in 2006. (*See* ECF No. 25, at 5; R. 342, 740-41.) The ALJ noted evidence of this treatment in the record (R. 15, 377, 740), but explained that the treatment occurred years prior to the relevant period and pointed to records showing that the Plaintiff is currently asymptomatic and has no evidence of active infection. (R. 593, 758-59.) Likewise, this Court has not found any medical evidence in the record that the Plaintiff still suffers side effects from these medications. Moreover, at the administrative hearing, when asked about the medications she is *currently* taking, the Plaintiff said "[r]ight now, the medications that I'm taking for antidepressants, they don't have any huge side effects that get involved in everyday living. It's basically sleep these days giving me a hard time

– getting the sleep that I need."  (R. 49.)

To the second point, (1) the ALJ plainly did consider the Plaintiff's voluminous treatment records and the relevant medical opinions, and (2) sufficient evidence of record supports the conclusion that the medication side effects were not disabling.  (*See* R. 20-23.)  Regarding the Plaintiff's mental impairments, the ALJ explained that the Plaintiff "experiences symptoms of worry, low energy, crying, trouble with sleep, and worry.  However, with treatment she reports improvement in her symptoms.  Mental status examination shows that she presents as downcast and anxious, but that she is mostly alert, oriented, cooperative, attentive, has intact cognitive functioning, intact memory, normal insight, and intact judgment."  (R. 23.)  He then ultimately concluded that the record evidence was consistent with mild to moderate limitations in the areas of mental functioning, rather than the significant limitations alleged.  (*Id.*)

To support this conclusion, the ALJ walked through the medical record evidence, accurately and comprehensively summarizing the development of the Plaintiff's mental impairments from 2018 through 2021.  (R. 20-21.)  The ALJ provided pinpoint citations to support his assessment that the Plaintiff mostly presented with improved mood or moderate depression, and positive indicators of mental status.  (R. 20; *see, e.g.,* R. 438-41, 455, 459, 466, 480, 570.)  The ALJ acknowledged that the Plaintiff was briefly hospitalized in 2021 for suicidal ideation (R. 764), but beyond that the ALJ cited to records indicating that during the relevant time period the Plaintiff was not experiencing severe side effects and was responding well to treatment (R. 17, 20-21, 750, 765, 798 (treating provider wrote "currently the symptoms of depression and anxiety have been well controlled"), 1002-03 ("Behavior has been stable and uneventful and medication compliance is good"), 1006 ("no side effects are reported"), 1010, 1013, 1017, 1020.)  The ALJ also appropriately relied on medical opinions from two State agency psychological consultants,

one of whom opined that the Plaintiff's "anxiety and low mood would contribute to variability in work effort and persistence," but that "she mostly had good response to treatment." (R. 22.)

To be sure, it is clear from the record that the Plaintiff had her ups and downs, but the question is whether there is substantial evidence to support the ALJ's decision not to credit the Plaintiff's claims that her medication side effects were debilitating. Since the Court finds that substantial evidence supports the ALJ's decision, it must be upheld. *See Johnson v. Astrue*, 563 F. Supp. 2d 444, 454 (S.D.N.Y. 2008); *see also Traci R. o/b/o E.A.O.B. v. Comm'r of Soc. Sec.*, No. 5:21-cv-607 (DNH) (TWD), 2022 WL 4354367, at *6 (N.D.N.Y. Sept. 20, 2022), *report and recommendation adopted sub nom. Traci May R. on behalf of E.A.O.B. v. Comm'r of Soc. Sec.*, No. 5:21-cv-607, 2022 WL 12318225 (N.D.N.Y. Oct. 20, 2022) ("Under the substantial evidence standard of review, it is not enough for [p]laintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support her position[,]" as "substantial evidence means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion[.]" (internal quotation marks and citation omitted)).

## IV.   CONCLUSION

For the reasons stated above, the Court concludes that the ALJ's decision was supported by substantial evidence and free of legal error. Therefore, the Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 25) is **DENIED**. The Commissioner's Motion for an Order to Affirm the Decision (ECF No. 27) is **GRANTED**.

This is not a recommended ruling. The parties consented to the jurisdiction of the undersigned Magistrate Judge, who may therefore direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure. (ECF No. 14.) Appeals may be made directly to the appropriate United States Court of Appeals. *See* 28 U.S.C. § 636(c)(3); Fed.

R. Civ. P. 73(c).  The Clerk of the Court is respectfully directed to enter judgment in favor of the

Defendant, and to close this case.

*/s/ Thomas O. Farrish*

Hon. Thomas O. Farrish
United States Magistrate Judge
